BENNETT ROBERTSON, plaintiff in error, *vs.* ALEXANDER F. PHARR, defendant in error.

1. In order to entitle a party to have a judgment entered on the minutes *nunc pro tunc*, he must show when it was rendered, at what term of the court, if not on what day of the term.

2. When a case stands on the docket as undisposed of, and no entry on the papers or elsewhere is produced indicating any disposition of it, a final judgment cannot be entered *nunc pro tunc* on parol testimony alone, unaided by the judge's recollection, where counsel for one of the parties denies on oath all knowledge of the alleged judgment, and there is no positive affirmative evidence but that of the adverse counsel.

Judgments. Amendment. Before Judge CLARK. Sumter Superior Court. October Term, 1875.

Reported in the opinion.

C. F. CRISP; N. A. SMITH; M. R. STANSELL, for plaintiff in error.

W. A. HAWKINS, for defendant.

BLECKLEY, Judge.

A judgment was rendered in July, 1867. Execution issued thereon, was levied upon certain land, as defendant's property, in August. 1869. In September thereafter the defendant filed an affidavit of illegality on two grounds: first, that he was never served with the declaration or process—never acknowledged service and never appeared, nor did he even know anything about the proceedings; second, that the consideration of the debt was slaves. The case was entered on the illegality docket at October term, 1869. In January, 1875, the court passed an order reciting that the "illegality" had been lost, and directing that, if not established by the next term the same should be dismissed; and ordering, also, that the plaintiff establish the original declaration, or, failing to do so, and it should be needed, that the case should be dismissed. An order establishing the declaration, process, officer's return of service, verdict and judgment, with other entries on the declaration, was passed in the same month of January. At October term, 1875, the defendant moved to enter upon the minutes a judgment which he alleged had been rendered by the court at a previous term, sustaining the illegality. The question was, whether such a judgment had,

in fact, been rendered, and if so, when? On going into evidence it appeared that the case stood on the illegality docket just as it was orginally entered. The judge had neither marked it out nor made any memorandum concerning it. There was no writing whatever produced that afforded any hint or intimation that the case had ever been disposed of. The original illegality papers were found and were before the court. They showed no judgment against the plaintiff for costs nor anything else on the matter in question. The movant supported his motion wholly by parol testimony. Colonel Hawkins, his attorney, testified that he was certain the case was called, and that he took an order sustaining the affidavit of illegality, in substance the same as that now proposed to be entered *nunc pro tunc;* that he had a pretty clear recollection of drawing the order; and that his recollection was, that on the calling of the case, it was announced that the note, which was the foundation of the execution, was given for slaves, and that the order was taken. The deputy sheriff who made the levy, testified that he thought he was in court when the case was called with some other similar cases, and that his remembrance was the affidavit was sustained. The movant himself testified that the plaintiff's attorney told him the execution was dead, and offered to receipt it in full if witness would pay his fee; that he thought this was after the case had been called in court, the illegality sustained, and the order sustaining it taken, but was not certain. On the other hand, the plaintiff's attorney testified that, after the constitution of 1868, he supposed the execution was dead, and did offer to receipt in full if movant would pay his fee, but he never knew the execution had been levied, or that any illegality was taken; that he was present in court most of the time during the call of the dockets, and had no notice of the case ever having been taken up; and that if any such order was ever granted it was without his knowledge or consent. The deputy clerk testified that he had been in office several years since 1869, a part of the time as deputy sheriff, and that he did not remember that the illegality docket had been

called since that year; that all late cases of illegality were entered on the issue docket.

1. On this evidence, chiefly on that of Colonel Hawkins, as the judge certifies, the court granted the motion; and a judgment sustaining the illegality was entered on the minutes *nunc pro tunc.* But it was entered as of no particular day or term. The evidence does not show when it was rendered. For that reason, if there were no other, we think the court erred. A judgment is too important a matter to float at large in a stream of time six years wide. Important rights may depend on its date. The term, at least, if not the day of the term when it was rendered, should appear. Unless that much certainty can be imparted to it, it is too loose to become a record. When a suitor claims to have recovered a judgment, he must show with reasonable certainty when he recovered it. If he asks to have it entered "now for then," it must be known what term "then" applies to. Now for then! Now for when?

2. But the evidence that any judgment was rendered at all was altogether in parol. None of it was positive except that of the attorney for one of the parties. The attorney for the other party denied all knowledge of the matter. It does not appear what judge was presiding, or that he did or could aid the evidence by his own recollection. The docket was silent, the minutes of the court were silent; no entry on the papers or elsewhere hinted at such a judgment; the paper, drawn up as a judgment at the time, had not been preserved; there was absolutely nothing but memory to depend upon. A court of record speaks by its records. It would be dangerous in the extreme to shape its records by the unaided recollection of one of the counsel, however clear and positive his recollection might be. Conceding, as we do, to Col. Hawkins the purest and most unimpeachable veracity, there was not enough evidence before the court to establish the rendition of a judgment. Neither his memory nor that of any other private person ought to be accepted as a substitute for a record, or as the equivalent of record evidence. We cannot recognize memory

as serving, for years, the purposes of the minutes of court. It is far better to abide by the docket, and let the case be disposed of accordingly.

Judgment reversed.